IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN MURPHY, # M04196, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>LATOYA HUGHES, )<br>JON LOFTUS, and )<br>ANTHONY WILLS, )<br>)<br>Defendants. ) | Case No. 24-cv-00107-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on the motion for summary judgment filed by Defendants Hughes, Loftus, and Wills (Doc. 29). Plaintiff Steven Murphy opposes the motion (Docs. 37, 41). For the following reasons, the motion is **GRANTED in part and DENIED in part**.[1]

## BACKGROUND

Plaintiff filed this this *pro se* civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights (Doc. 1). Plaintiff is currently incarcerated at Menard Correctional Center. He alleges Defendants denied his requests to be placed in protective custody ("PC"), after which he was attacked by another inmate and injured.

Plaintiff makes the following allegations in the Complaint: Plaintiff began requesting PC placement in August 2021 because he believed his life was in danger. Defendants Wills (Menard Warden), Hughes (Acting IDOC Director) and Loftus (Administrative Review Board) denied these requests (Doc. 1, pp. 9, 26). On or about September 22, 2023, as Plaintiff was being moved to the

---

[1] Given the undisputed material facts, the Court concludes that it is not necessary to hold a hearing on the exhaustion issues raised in Defendants' motion.

1

PC "kick-out/denial yard," another inmate who had also been denied PC attacked Plaintiff (Doc. 1, pp. 9, 35). Plaintiff suffered a broken thumb and facial injuries. He later had surgery to place a plate and screws in his thumb. He now has a large scar, loss of mobility, and "constant aching pain" in his thumb.

Following threshold review, Plaintiff is proceeding on the following claims (Doc. 14):

Count 1: Eighth Amendment failure to protect claim against Hughes, Loftus, and Wills, for denying Plaintiff's request to be housed in Protective Custody.

Count 2: State law negligence claim against Hughes, Loftus, and Wills, for denying Plaintiff's request to be housed in Protective Custody.

### Relevant Grievances

Defendants identify three grievances filed by Plaintiff that may be relevant to his claims (Doc. 29, p. 4): Plaintiff's grievance/appeal of the denial of his August 18, 2023, PC request (Doc. 29-2, pp. 96-101); Grievance No. 571-8-2023, filed August 20, 2023 (Doc. 29-2, pp. 91-95); and a Grievance (no number assigned), filed December 19, 2023 (Doc. 29-2, pp. 74-75).

Plaintiff asserts that another relevant grievance exists, No. K4-1123-1459 (filed on October 6, 2023 after the September 22, 2023 attack) (Doc. 29-2, pp. 74-75; Doc. 37, pp. 1-5; Doc. 41). Plaintiff filed the December 19, 2023 grievance to complain that Grievance No. K4-1123-1459 was never returned to him. He argues he was prevented from exhausting Grievance No. K4-1123-1459 because prison officials never responded to it.

*Grievance/Appeal of Denial of August 18, 2023 PC Request*

Plaintiff requested PC on August 18, 2023, stating:

I am seeking P.C. because my life is in danger in the East and West cellhouses General population due to me being on "Blasted" and Anthony Wills retaliating against me by having his staff tell the gangs I have a bogus case which I am here for.

(Doc. 29-2, p. 101).

Wills denied the PC request on August 28, 2023 (Doc. 29-1, p. 5; Doc. 29-2, p. 101). Plaintiff checked the box to grieve that decision to the ARB on September 1, 2023 (Doc. 29-2, p. 101). The ARB denied the PC request on September 21, 2023 (Doc. 29-2, p. 96).

### *Grievance No. 571-8-2023, dated August 20, 2023*

In this grievance, Plaintiff complained that Hughes, Wills, the ARB Chief, and other officials have punished him and other inmates for seeking PC (Doc. 29-2, pp. 94-95). He claimed that when inmates apply for PC and give information about gangs, these officials question and/or notify the gangs regarding the PC applicant's allegations and then send the applicant back to general population where they are vulnerable to attack by gang members before they can sign back into PC. As relief, Plaintiff requested a transfer away from Menard.

On August 29, 2023, Wills concurred with the grievance officer's recommendation that the grievance be deemed moot because the cell house was compliant with ID 05.05.125 and PC is out of the grievance office's jurisdiction per DR 54.870 (Doc. 29-2, pp. 92-93). The ARB denied Plaintiff's appeal on September 28, 2023, noting he was presently housed in a PC facility and should follow the proper procedure for placement; transfers are an administrative decision, and staff misconduct was not substantiated (Doc. 29-2, p. 91).

### *Grievance No. K4-1123-1459, allegedly filed October 6, 2023*

No documentation of Grievance No. K4-1123-1459 is included in Defendants' records, other than Plaintiff's description of it in the later December 19, 2023 grievance and the ARB response to the December 19, 2023 grievance summarized below (Doc. 29-2, p. 73; Doc. 37). Plaintiff asserts he filed Grievance No. K4-1123-1459, marked as an emergency, on or about October 6, 2023 to seek redress after the September 22, 2023 attack on him (Doc. 29-2, p. 74; Doc.

3

37, pp. 1, 8-9). He states that after 45 days passed with no response to Grievance No. K4-1123-1459, he wrote his counselor to inquire on its status. He then filed the December 19, 2023 grievance with the ARB (Doc. 37, p. 9). Plaintiff never received a response to Grievance No. K4-1123-1459.

### *December 19, 2023 Grievance*

In this grievance, Plaintiff states that he had been trying to exhaust the earlier grievance, No. K4-1123-1459, filed on or about October 6, 2023, but the Menard Health Care Unit refused to return the grievance back to him (Doc. 29-2, p. 74). Plaintiff did not request emergency review of the December 19, 2023 grievance. He noted that more than 60 days had passed with no response to Grievance No. K4-1123-1459.

The December 19, 2023 grievance asserts that in Grievance No. K4-1123-1459, Plaintiff complained that he was denied PC on September 22, 2023, placed on PC kickout, and then was attacked by another inmate on his way to PC kickout yard. He suffered a broken thumb and swollen eye because Anthony Wills denied his PC request, refused to protect him, and placed him in danger (Doc. 29-2, pp. 74-75). He wrote to his counselor several times seeking the return of Grievance No. K4-1123-1459, to no avail (Doc. 29-2, p. 75). In the December 19, 2023 grievance, Plaintiff asked to be housed on "front street" when he was released from Health Care, and for Anthony Wills to be held responsible for his injury for denying and refusing him protection and placing him in danger (Doc. 29-2, p. 74).

Plaintiff explains he filed the December 19, 2023 grievance directly with the ARB, informing them that Menard staff refused to respond to Grievance No. K4-1123-1459. (Doc. 37, p. 9). The ARB received the December 19, 2023 grievance on December 22, 2023 (Doc. 29-2, p. 74). On January 3, 2024, the ARB rejected the December 19, 2023 grievance because it was

4

submitted past the 60-day timeframe with reference to the September 22, 2023 incident mentioned in the grievance (Doc. 29-1, p. 4; Doc. 29-2, p. 73).

## DISCUSSION

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *see also Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).

For a prisoner to properly exhaust his administrative remedies, he or she must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must be fully completed before the prisoner files suit; a case filed while a grievance appeal is still ongoing is premature and must be dismissed without prejudice. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020); *see* also *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Because Plaintiff was an IDOC inmate when he filed this action, he was required to follow the grievance process set forth in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). Under IDOC's procedure, an inmate initiates a grievance with his

counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. "A grievance must be filed...within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). A grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the prisoner does not know a person's name, he "must include as much descriptive information about the individual as possible." *Id.*

If an inmate is unsatisfied with the outcome at the facility, he must appeal to the Administrative Review Board ("ARB") within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures further allow for an inmate to file an emergency grievance; to do so, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender." 20 ILL. ADMIN. CODE § 504.840(a). After such a determination, processing of the grievance is expedited, as is any appeal. 20 ILL. ADMIN. CODE § 504.840(b); § 504.850(f).

An inmate is required to exhaust only those administrative remedies that are available to him. *See Ross v. Blake*, 578 U.S. 632, 642 (2016). Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dol*e, 438 F.3d at 809.

Defendants argue that Plaintiff's grievance/appeal to the ARB over the denial of his August 18, 2023 PC request is the only relevant grievance in this matter because it relates to his last PC request before the alleged September 22, 2023 injury. They further argue this grievance

6

was too vague to exhaust Plaintiff's administrative remedies as to the September 22, 2023 incident because it did not name Hughes or Loftus and did not allege that Wills failed to protect him or failed to grant him PC; it merely complained that Wills was retaliating against Plaintiff and did not contain factual details regarding each aspect of Plaintiff's Complaint.

Additionally, Defendants argue Plaintiff's August 18, 2023 PC request did not name any individual(s) or group(s) that were allegedly endangering Plaintiff's life, and the vague nature of the PC request did not give prison officials notice of the nature of the threats so they might take corrective action. They liken the August 18, 2023 request to a "string of overly vague" PC requests by Plaintiff, such as one dated December 1, 2022 in which Plaintiff asked for protection because his "life is in danger and there has been a 'hit' placed on [him] since July 2021" (Doc. 29-2, p. 155).

Plaintiff argues that he attempted to exhaust the claims raised in his Complaint by filing Grievance No. K4-1123-1459 on October 6, 2023 over the September 22, 2023 denial of PC that resulted in the attack on that date, but Defendants prevented him from exhausting the claims by refusing to respond to that grievance. Plaintiff notes that the Illinois Administrative Code does not instruct a prisoner what to do if prison officials fail to return a grievance. He further asserts that Defendants were well aware of his reasons for seeking PC because he had informed them numerous times he had been threatened by gangs and his ex-gang in the East and West cellhouses, who put him on "Blasted" because Wills and other Menard staff told the gangs he had a bogus criminal case (Doc. 37, p. 2; Doc. 29-2, pp. 127, 132, 213-14; Doc. 29-3, pp. 3-4, 32-33).[2]

---

[2] Plaintiff supplemented his original response with copies of documents showing that two emergency grievances filed on September 29, 2023 and September 30, 2023, seeking medical treatment and other relief relating to the September 22, 2023 attack, were not answered by the grievance officer until March 6, 2025 and March 24, 2025 (Doc. 41, pp. 3-8). Both had been granted emergency review by Wills (Doc. 41, pp. 4, 7). He argues that this 18-month delay in processing these grievances proves that he attempted to exhaust the grievances at issue in this lawsuit (Doc. 41, pp. 1-2).

7

Plaintiff's request for PC dated August 18, 2023, demonstrates that Wills denied PC placement and signed the form on August 28, 2023 (Doc. 29-2, p. 101). Plaintiff followed the required two-step procedure to grieve that decision to the ARB, which consisted of signing and dating the document. *Id.* The ARB's final denial was the last step for Plaintiff to exhaust his appeal from the August 18, 2023 PC denial.

Defendants' argument that this grievance was defectively vague under the requirements set forth in 20 ILL. ADMIN. CODE § 504.810(c) is unconvincing in the context of the PC appeal procedure. The appeal section on the PC request form provides no space for the grievant to add any "factual details" required by § 504.810(c). The grievant merely checks a box, and the form specifies that "no other grievance form need be filed by me." (Doc. 29-2, p. 101).

Moreover, Plaintiff was interviewed in connection with the August 18, 2023 PC request (Doc. 29-2, p. 100). The interviewers' notes on the Protective Custody Review form reflect that Plaintiff stated his need for PC was still the same as in the past, that he had been denied PC 13 times, and that he "provides no new information to substantiate his need for protective custody." *Id.* This form was signed by Wills, noting the request was denied. *Id.* The record of Plaintiff's PC requests earlier in 2023 show that he reported the Black Disciples (BD) and Vice Lords put him on "blast"/put a "hit" on him because of his case (Doc. 29-2, p. 148); threatened him because he talked to I.A. (Internal Affairs) (Doc. 29-2, p. 143); two inmates discussed stabbing him (Doc. 29-2, p. 127); and the BDs made him sign into PC due to the nature of his case and owing money to two Vice Lords (Doc. 29-2, p. 120). Plaintiff thus identified the two gangs that issued threats against him and gave prison officials notice of the reasons he sought protection.

Wills and the others who denied Plaintiff's August 18, 2023 PC request would necessarily have been aware of Plaintiff's previously stated reasons for seeking PC when they concluded that

he had not presented new information to support the most recent request and again denied him protection for "lack of evidence to substantiate his life is in danger." (Doc. 29-2, p. 100). This record satisfies the exhaustion requirement that Plaintiff set forth the basis for his grievance challenging the denial of his August 18, 2023 PC request.

That said, Plaintiff mentioned only Defendant Wills by name in the PC request and subsequent grievance. Thus, the August 18, 2023 grievance/appeal sufficiently exhausted Plaintiff's claims in Counts 1 and 2 against Wills, but did not exhaust his claims against Hughes or Loftus, whom he did not mention in that document.

Grievance No. 571-8-2023, filed before Plaintiff's PC request was denied and before he was attacked, named Hughes, Wills, and the ARB Chief (presumed to be Loftus) (Doc. 29-2, pp. 94-95). It raised generalized complaints that Plaintiff and others were being punished for seeking PC because the named officials questioned or notified the gangs about PC requests, then placed PC applicants back into general population where they would be attacked. While Plaintiff procedurally exhausted this grievance, it made no mention of his pending August 18, 2023 PC request, and therefore, did not serve to exhaust his claims in this case.

Finally, Plaintiff claims he filed Grievance No. K4-1123-1459 as an emergency on October 6, 2023, but Menard officials never provided any response. Unsurprisingly, no record of this grievance appears in the IGRV, which tracks grievances that are submitted to the ARB (Doc. 29, p. 3). However, Defendants have not disputed Plaintiff's sworn statement that he timely submitted this grievance after the September 22, 2023 attack and that he wrote the counselor to inquire about it after more than a month elapsed with no response (Doc. 37, p. 9). Nor have Defendants submitted any grievance log from Menard that might document the receipt or disposition of Grievance No. K4-1123-1459. As such, Defendants have not met their burden to show that

9

Plaintiff failed to follow the required grievance procedure to exhaust this grievance. The record before this Court supports Plaintiff's assertion that his attempt to exhaust Grievance No. K4-1123-1459 was thwarted by Menard officials' inaction.[3]

Because no copy of Grievance No. K4-1123-1459 has been provided, the Court cannot determine whether Plaintiff named the other defendants in that document. Plaintiff claims the ARB refused to process his grievance because it named Defendants Hughes and Wills, however, he states Grievance No. K4-1123-1459 was never returned to him, preventing him from appealing it to the ARB (Doc. 37, p. 5). Plaintiff's later description of Grievance No. K4-1123-1459 states only that the "Menard warden and staff" refused to respond to that grievance or return it (Doc. 37, pp. 7-9). He does not claim that Grievance No. K4-1123-1459 complained about Hughes or Loftus, either by name or position. Likewise, the December 19, 2023 grievance does not name Hughes or Loftus, only Wills. Nothing now before the Court indicates that Plaintiff exhausted the claims in this action against Hughes or Loftus. The motion for summary judgment will therefore be granted in part.

## DISPOSITION

The Motion for Summary Judgment on exhaustion filed by Defendants Hughes, Loftus, and Wills (Doc. 29) is **GRANTED** in part as to the claims against Hughes and Loftus. Defendants Hughes and Loftus and the claims against them in Counts 1 and 2 are **DISMISSED** without prejudice for failure to exhaust administrative remedies.

The Motion is **DENIED** in part as to the claims against Wills. This case will proceed on the claims in Counts 1 and 2 against Wills as set forth in the Memorandum and Order of June 26,

---

[3] Plaintiff's supplementary information (Doc. 41) supports his claim that Menard officials frustrated his attempt to exhaust Grievance No. K4-1123-1459. Plaintiff filed grievances seeking medical treatment and other relief on September 29, 2023, and September 30, 2023 (shortly before he filed Grievance No. K4-1123-1459) but the grievance officer's responses were delayed for well over a year, until March 2025 (Doc. 41, pp. 3, 6).

2024 (Doc. 14).

The matter of exhaustion of administrative remedies now being resolved, the stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. The Court will enter a separate scheduling order setting discovery and dispositive motion deadlines.

**IT IS SO ORDERED.**

**DATED: September 2, 2025**

<u>*s/ Staci M. Yandle*</u>
**STACI M. YANDLE**
**United States District Judge**